## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| *In re Benefits Partner, LLC d/b/a Salus Group Litigation* | Case No. 2:25-cv-11108-LVP-APP <br><br> Hon. Linda V. Parker <br><br> Hon. Mag. Judge Anthony P. Patti |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Pursuant to Local Rule 7.1(c), Plaintiffs Janine Orosco, Arthur Wagner, Preston Tilger, and John Stacho ("Plaintiffs") respond to Defendant Benefits Partner, LLC d/b/a Salus Group's ("Defendant" or "Salus") Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Motion"). *See* ECF No. 21. Pursuant to Local Rule 7.1(a), the Parties conferred regarding the Motion. Plaintiffs respectfully disagreed with Defendant.

As detailed in the attached brief, dismissal is improper because Plaintiffs sufficiently (1) established Article III standing and (2) alleged each of their claims. Thus, Plaintiffs respectfully request that the Court deny the Motion in its entirety. If the Court grants the Motion in whole or in part, then Plaintiffs respectfully request leave to amend the pleadings.

1

Dated: November 3, 2025

By: */s/ Raina C. Borrelli*
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Interim Class Counsel for Plaintiffs and the Proposed Class*

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: (888) 350-3931

E. Powell Miler (P39487)
Gregory A. Mitchell (P68723)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
gam@millerlawpc.com

Gary M. Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100

2

Chicago, Illinois 60606
T: 866.252.0878
gklinger@milberg.com

Nathan J. Fink
**FINK BRESSACK**
38500 Woodward Ave., Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
nfink@finkbressack.com

Sean Short
Arkansas Bar No. 2015079
**SANFORD LAW FIRM, PLLC**
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946
sean@sanfordlawfirm.com

*Additional Counsel for Plaintiffs and the
Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| *In re Benefits Partner, LLC d/b/a Salus Group Litigation* | Case No. 2:25-cv-11108-LVP-APP |
|  | Hon. Linda V. Parker |
|  | Hon. Mag. Judge Anthony P. Patti |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT <u>PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)</u>**

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED..................................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iv

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ...................................................................................2

LEGAL STANDARD...............................................................................................4

ARGUMENT ...........................................................................................................5

   I.   Plaintiffs Sufficiently Establish Article III Standing. ....................................5

     a.   The Privacy Injuries Establish Standing. ....................................................6

     b.   The Substantial Risk of Further Harm Establishes Standing.......................8

     c.   Monetary Losses Establish Standing. ........................................................10

     d.   Targeted and Suspicious Spam Calls Establish Standing. .........................12

     e.   Lost Time and Effort Establishes Standing................................................12

     f.   Emotional Injuries Establish Standing.......................................................13

   II.   Plaintiffs Sufficiently Alleged Their Claims. ............................................14

     a.   Plaintiffs Allege Cognizable Injuries.........................................................14

     b.   Plaintiffs Sufficiently Alleged Negligence. ................................................18

     c.   Plaintiffs Sufficiently Alleged Their Contract Claims...............................20

     d.   Plaintiffs Sufficiently Alleged Unjust Enrichment. ...................................22

     e.   Plaintiffs Sufficiently Alleged Declaratory Judgment...............................23

CONCLUSION .....................................................................................................24

## STATEMENT OF ISSUES PRESENTED

1.     Should the Court dismiss the Consolidated Class Action Complaint ("Complaint") under Rule 12(b)(1) when Plaintiffs established Article III standing?

**Plaintiffs' Answer: No.**

2.     Should the Court dismiss the Complaint under Rule 12(b)(6) when Plaintiffs sufficiently alleged cognizable damages?

**Plaintiffs' Answer: No.**

3.     Should the Court dismiss the negligence claim under Rule 12(b)(6) when Plaintiffs sufficiently alleged cognizable damages and causation?

**Plaintiffs' Answer: No.**

4.     Should the Court dismiss the contract claims under Rule 12(b)(6) when Plaintiffs sufficiently alleged mutual assent and consideration?

**Plaintiffs' Answer: No.**

5.     Should the Court dismiss the unjust enrichment claim under Rule 12(b)(6) when Plaintiffs sufficiently alleged the inequitable retention of conferred benefits?

**Plaintiffs' Answer: No.**

6.     Should the Court dismiss the declaratory judgment claim under Rule 12(b)(6) when Plaintiffs sufficiently alleged a factual basis for injunctive relief?

**Plaintiffs' Answer: No.**

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

***Article III Standing***

*Rodriguez v. CRG Lynwood LLC*, 2025 WL 2700614 (E.D. Mich. Sep. 22, 2025).

***Cognizable Damages***

*Lochridge v. Quality Temp. Servs.*, 2023 WL 4303577 (E.D. Mich. June 30, 2023);
*Kingen v. Warner Norcross + Judd LLP*, 2023 WL 11965363 (W.D. Mich. Oct. 5,
2023); *Hummel v. Teijin Auto. Techs., Inc.*, 2023 WL 6149059 (E.D. Mich. Sept. 20,
2023).

***Negligence***

*Kingen v. Warner Norcross + Judd LLP*, 2023 WL 11965363 (W.D. Mich. Oct. 5,
2023).

***Contract Claims***

*Lochridge v. Quality Temp. Servs.*, 2023 WL 4303577 (E.D. Mich. June 30, 2023);
*Hummel v. Teijin Auto. Techs., Inc.*, 2023 WL 6149059 (E.D. Mich. Sept. 20, 2023).

***Unjust Enrichment***

*Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. App. 2006).

***Declaratory Judgment***

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wenco Mgmt. LLC*,
   696 F. Supp. 3d 432 (N.D. Ohio 2023) ..................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................5

*Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*,
   13 F.4th 531 (6th Cir. 2021) ....................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................4

*Bohnak v. Marsh & McLennan Cos.*,
   79 F.4th 276 (2d Cir. 2023) ................................................................ 8, 20

*Bowen v. Paxton Media Grp., LLC*,
   2022 WL 4110319 (W.D. Ky. Sep. 8, 2022) ............................... passim

*Brickman v. Maximus, Inc.*,
   2022 WL 16836186 (S.D. Ohio May 2, 2022)........................ 9, 10, 13

*Briggs v. N. Highland Co.*,
   2024 WL 519722 (N.D. Ga. Feb. 9, 2024)..........................................20

*Brooks v. Peoples Bank*,
   732 F. Supp. 3d 765 (S.D. Ohio 2024)................................... 11, 12, 13

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. Mar. 17, 2021)................................17

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..................................................................................8

*Daley v. LaCroix*,
   179 N.W.2d 390 (Mich. 1970) ..............................................................15

*Dickson v. Direct Energy, LP*,
    69 F.4th 338 (6th Cir. 2023) ................................................................................. 7

*Dinerstein v. Google, LLC*,
    73 F.4th 502 (7th Cir. 2023) ............................................................................... 18

*Doe v. Mission Essential Grp., LLC*,
    2024 WL 3877530 (S.D. Ohio Aug. 20, 2024) .................................................. 10

*Erickson v. Goodell Oil Co.*,
    180 N.W.2d 798 (Mich. 1970) ........................................................................... 20

*Fero v. Excellus Health Plan, Inc.*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017) ............................................................. 23

*Foman v. Davis*,
    371 U.S. 178 (1962) ........................................................................................... 25

*Galaria v. Nationwide Mut. Ins. Co.*,
    663 F. App'x 384 (6th Cir. 2016) ................................................................... 9, 10

*Haney v. Charter Foods N., LLC*,
    747 F. Supp. 3d 1093 (E.D. Tenn. 2024) .................................................. passim

*Hile v. Michigan*,
    86 F.4th 269 (6th Cir. 2023) ................................................................................. 4

*Hummel v. Teijin Auto. Techs., Inc.*,
    2023 WL 6149059 (E.D. Mich. Sep. 20, 2023) ................................... 15, 17, 20

*In re AMCA Data Breach Litig.*,
    2021 WL 5937742 (D.N.J. Dec. 16, 2021) ....................................................... 18

*In re Anthem, Inc. Data Breach Litig.*, (N.D. Cal. May 27, 2016)
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ................................................... 17

*In re Arthur J. Gallagher Data Breach Litig.*,
    631 F. Supp. 3d 573 (N.D. Ill. 2022) ........................................................... 19, 21

*In re Bon Secours Mercy Health Data Breach Litig.*,
    2025 WL 1827804 (S.D. Ohio July 2, 2025) ..................................................... 12

*In re Cap. One Consumer Data Sec. Breach Litig.*,
    488 F Supp 3d 374 (E.D. Va. 2020) ...................................................................23

*In re CBIZ Data Breach Litig.*,
    2025 WL 1557033 (N.D. Ohio June 2, 2025) ........................................... 8, 12, 13

*In re Experian Data Breach Litig.*,
    2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ..................................... 3, 7, 11, 17

*In re Flagstar Dec. 2021 Data Sec. Incident Litig.*,
    2024 WL 5659583 (E.D. Mich. Sep. 30, 2024) ....................................... 9, 10, 14

*In re GEICO Customer Data Breach Litig.*,
    691 F. Supp. 3d 624 (E.D.N.Y. 2023) ........................................................... 17, 18

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) .....................................................................17

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................................19

*In re MOVEit Customer Data Sec. Breach Litig.*,
    2024 WL 5092276 (D. Mass. Dec. 12, 2024) ......................................................17

*In re Numotion Data Incident Litig.*,
    2025 WL 57712 (M.D. Tenn. Jan. 9, 2025) ............................................... passim

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    198 F. Supp. 3d 1183 (D. Or. 2016) ....................................................................23

*Johnson v. Nissan N. Am., Inc.*,
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ..............................................................22

*Kingen v. Warner Norcross + Judd LLP*,
    2023 WL 11965363 (W.D. Mich. Oct. 5, 2023) ......................................... passim

*Kroeck v. UKG, Inc.*,
    2022 WL 4367348 (W.D. Pa. Sept. 21, 2022) .....................................................21

*Lochridge v. Quality Temp. Servs.*,
    2023 WL 4303577 (E.D. Mich. June 30, 2023) .......................................... passim

*Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.*,
   809 N.W.2d 553 (Mich. 2011) ...............................................................15

*Morris Pumps v. Centerline Piping, Inc.*,
   729 N.W.2d 898 (Mich. App. 2006) .......................................................22

*Newman v. Total Quality Logistics, LLC*,
   2021 WL 1192669 (S.D. Ohio Mar. 30, 2021) .......................................13

*Primus Grp., LLC v. Smith & Wesson Corp.*,
   844 F. App'x 824 (6th Cir. 2021) .............................................................4

*Rodriguez v. CRG Lynwood LLC*,
   2025 WL 2700614 (E.D. Mich. Sep. 22, 2025) .......................... passim

*Salazar v. Paramount*,
   133 F.4th 642 (6th Cir. 2025) ...................................................................7

*Shepherd v. Cancer & Hematology Ctrs. of W. Mich., P.C.*,
   2023 WL 4056342 (W.D. Mich. Feb. 28, 2023) .....................................13

*Silveira v. Commer. Specialty Truck Holdings, LLC*,
   2025 WL 2323911 (E.D. Ky. Aug. 12, 2025) ..................................... 9, 10

*Stasi v. Inmediata Health Grp. Corp.*,
   501 F. Supp. 3d 898 (S.D. Cal. 2020) .....................................................21

*Stinson v. Yum! Brands, Inc.*,
   2025 WL 2755879 (W.D. Ky. Aug. 29, 2025)................................ 8, 9, 10, 11

*Tate v. EyeMed Vision Care, LLC*,
   2023 WL 638346 (S.D. Ohio Sep. 29, 2023) ..........................................12

*Temborius v. Slatkin*,
   403 N.W.2d 821 (Mich. App. 1986) .......................................................20

*Thomas v. Montgomery*,
   140 F.4th 335 (6th Cir. 2025)....................................................................6

*Tignor v. Dollar Energy Fund, Inc.*,
   745 F. Supp. 3d 189 (W.D. Pa. Aug. 15, 2024) ......................................17

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................. 5, 6, 20

*Viviali v. One Point HR Sols., LLC*,
   2025 WL 1158740 (E.D. Ky. Apr. 21, 2025)........................................ 11, 12, 13

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ................................................................24

*Ziegler v. IBP Hog Mkt., Inc.*,
   249 F.3d 509 (6th Cir. 2001) ...........................................................5

## Other Authorities

RESTATEMENT (SECOND) OF TORTS (1977) ...................................................7

**INTRODUCTION**

In April 2025, Preston Tilger, Janine Orosco, Arthur Wagner, and John Stacho and all putative Class Members, received troubling letters from Salus Group ("Salus") warning them that they were at risk for "fraud" and "identity theft" because Salus had failed to protect their personal information (which Salus collected from their current or former employers). In October 2024, cybercriminals had gained "unauthorized access" to a treasure trove of Class Members' private information held by Salus—including names, dates of birth, Social Security numbers, drivers' license numbers, and financial account, medical, and insurance information— belonging to 40,177 individuals (the "Data Breach").

Salus acknowledged the risks created by the Data Breach and warned Plaintiffs to "be vigilant for incidents of fraud or identity theft by reviewing your account statements and free credit reports for any unauthorized activity." Amended Complaint, ¶ 70.[1] Despite Plaintiffs' lost time reviewing their accounts for the "fraud" and "identity theft" that Salus warned them about, Salus now backtracks on its warnings to "be vigilant for incidents of fraud or identity theft" and maligns the concerns of Plaintiffs as "speculative."

As a result of the Data Breach, Plaintiffs suffered numerous cognizable injuries. The Court should deny Salus's Motion to Dismiss ("Mot.") for two key

---

[1] Citations to ¶ refer to paragraph numbers in the Amended Complaint, ECF No. 19.

1

reasons. **First**, Plaintiffs have sufficiently established Article III standing and alleged multiple injuries-in-fact traceable to Salus. **Second**, Plaintiffs have adequately pled their claims, and, thus, dismissal at this early stage would be premature.

## FACTUAL BACKGROUND

Salus Group is a "healthcare solutions provider" that specializes in employee benefits and wellness programs. ¶ 41. Plaintiffs and Class Members were offered these services through their employers and/or insurance carriers (who had contracted with Salus). ¶ 42. As part of its business, Salus obtained the private information ("Private Information") of Plaintiffs and Class Members. *Id*. Such Private Information includes, *inter alia*, full names, dates of birth, Social Security number, drivers' license numbers, financial account information, health insurance information, clinical information, and medical treatment information. ¶ 64.

By collecting such highly sensitive Private Information, Salus assumed a duty "to implement reasonable practices to keep their sensitive Private Information confidential and securely maintained[.]" ¶ 48. Salus advertised in its official "Privacy Policy" that it "is committed to securing your data and keeping it confidential." ¶ 47. Plaintiff Tilger received a "New Hire Enrollment" email from his employer stating that "Our company partners with Salus as our broker and administration firm to host and process benefit enrollment using their web based platform" and that "[t]he system is encrypted and keeps your protected health

2

information private as required by HIPAA privacy regulations." ¶ 255.

However, Salus cut corners regarding data security—rendering the Private Information of Plaintiffs and Class Members as "low hanging fruit" for cybercriminals. ¶¶ 22-24. On October 9, 2024, cybercriminals infiltrated the data systems of Salus—and compromised the Private Information of Plaintiffs and Class Members. ¶ 3. At some undisclosed point in October, Salus noticed the Data Breach after seeing "suspicious activity in one employee's email account." *Id*. Thus far, Salus has admitted that "there was unauthorized access to the account for a period of time[.]" ¶ 64. In total, the Data Breach exposed the Private Information of approximately 40,177 Class Members. ¶ 68.

Salus omitted key facts about the Data Breach—including what "suspicious activity" entails, what a "period of time" means, and how the Breach occurred. ¶¶ 64-65. Worse, Salus waited until March 27, 2025 (i.e., a full 169 days) after the Data Breach, to warn Class Members. ¶ 6. Salus justifies its delay by stating that it "was unable to determine" what data was accessed by cybercriminals. *See* Mot. at 1, 9. But this delay kept the Class in the dark regarding the existence and severity of the Breach. ¶ 5. In the aftermath of the Data Breach, Plaintiffs suffered numerous cognizable injuries.

For example, Salus confirmed that the Data Breach had exposed Mr. Tilger's Social Security number, and, soon after, Experian warned him that his "info was

exposed on the dark web[,]" including his Social Security number, and that [i]t can't be removed." ¶ 269. As a result, he incurred an out-of-pocket cost of $19.99 for a one-month Experian membership to guard against the "fraud" and "identity theft" that Salus warned him about. ¶ 270. Likewise, "Plaintiff Stacho has spent several hours researching the Data Breach, reviewing his bank accounts, monitoring his credit report, changing his passwords[.]" ¶ 248.

The exposure of one's Private Information is a bell that cannot be unrung, creating an enduring and immediate danger of identity theft and fraud. ¶ 28. Salus inflicted numerous injuries upon Plaintiffs: increased risk of identity theft and fraud, emotional injuries, invasion of privacy, increased scam calls, damage to Private Information, and lost time responding to the Data Breach. ¶¶ 30, 162, 229-92.

## **LEGAL STANDARD**

Under Rule 12(b)(1), a motion to dismiss for lack of Article III standing challenges subject matter jurisdiction. *Primus Grp., LLC v. Smith & Wesson Corp.*, 844 F. App'x 824, 826 (6th Cir. 2021). When a defendant questions the sufficiency of the pleadings, it launches a "facial attack[.]" *Id*. In such cases, courts "must accept the allegations set forth in the complaint as true while drawing all inferences in favor of the plaintiff[.]" *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023) (internal quotation omitted). Under Rule 12(b)(6), plaintiffs need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is plausible when the facts allow the court to draw the reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must accept as true the factual allegations and draw all reasonable inferences in the plaintiff's favor. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).

## **ARGUMENT**

### I.     **Plaintiffs Sufficiently Establish Article III Standing.**

Plaintiffs have Article III standing—which requires (1) an injury-in-fact (2) that is fairly traceable to defendant's alleged conduct, and (3) is likely to be redressed by a favorable court ruling. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). More specifically, an injury-in-fact must be concrete, particularized, and actual or imminent. *Id*. And an injury-in-fact is "concrete" when it has a close relationship to a harm traditionally recognized in American courts. *Id*. at 424.

At the pleading stage, a plaintiff "only needs to allege facts that, when assumed true, make a plausible claim that she has standing." *Rodriguez v. CRG Lynwood LLC*, 2025 WL 2700614, at *2 (E.D. Mich. Sep. 22, 2025) (citing *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 544 (6th Cir. 2021)). Plaintiffs alleged numerous injuries-in-fact: (1) privacy injuries; (2) the substantial risk of future harm; (3) monetary losses; (4) an influx in targeted and

suspicious spam; (5) lost time and effort; and (6) emotional injuries.[2]

### a.   The Privacy Injuries Establish Standing.

In the data breach case *Rodriguez*, Judge Laurie J. Michelson held that the alleged "privacy injury is an injury-in-fact[.]" 2025 WL 2700614, at *4. The plaintiff alleged that "her privacy was violated" when "hackers accessed [her] data" in the breach. *Id*. at *3. The Court noted that "the wording of the breach letter complicates the analysis" because the letter stated that "data was *potentially* accessed and acquired by a person not authorized to view them[.]" *Id*. (emphasis in original). Nonetheless, the Court held that "[a]t this early stage of the case, however, [plaintiff] is entitled to the benefit of the doubt, and so the Court will infer that her data was accessed." *Id*. (citing *Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025)).

Based on those allegations, the Court concluded that the "privacy injury" is analogous to "one of the common-law invasion of privacy torts: intrusion upon seclusion." *Id*. at *4 (citing *TransUnion*, 594 U.S. at 424). The Court explained that "one 'intrudes' upon the privacy of another 'by opening his private and personal mail, searching his safe or wallet, [or] examining his private bank account.' . . . Those examples are similar to what [plaintiff] has alleged: she gave

---

[2] Plaintiffs pleaded other harms that establish injury-in-fact (e.g., diminished value of private information and lost benefit of the bargain). ¶¶ 240, 253, 268, 292; *see also In re Numotion Data Incident Litig.*, 2025 WL 57712, at *3-4 (M.D. Tenn. Jan. 9, 2025) (finding standing when plaintiffs alleged lost benefit of the bargain). But at present, Plaintiffs will focus on the six other injuries for the sake of concision.

her identifying information to [defendant] for safekeeping, but, through its negligence, [defendant] allowed hackers to examine it." *Id*. (quoting RESTATEMENT (SECOND) OF TORTS § 652B (1977)). On this point, Salus relies on case law from Mississippi. *See* Mot. at 8-9. But these cases are of limited persuasive value when *Rodriguez* provides clear guidance.

In sum, allegations that cybercriminals "potentially accessed" private information satisfy "the injury-in-fact requirement of standing." *Rodriguez*, 2025 WL 2700614, at *3-4 ("[Plaintiff's] assertion that her privacy was violated when [defendant] failed to adequately protect her private information from hackers is the 'kind of harm' that is the basis of a tort claim traditionally addressed by American courts. So her privacy injury is 'concrete.'") (citing *Salazar v. Paramount*, 133 F.4th 642 (6th Cir. 2025) and *Dickson v. Direct Energy, LP*, 69 F.4th 338 (6th Cir. 2023)).

Critically, Plaintiffs here provide even stronger allegations than those in *Rodriguez*—specifically, Plaintiffs alleged a more invasive and concrete "privacy injury." ¶¶ 64, 269-75. ***First***, in *Rodriguez*, the cybercriminals only "*potentially* accessed" the private information. 2025 WL 2700614, at *3. But here, Salus confirmed that "there *was* unauthorized access" to the Private Information of Plaintiffs and Class Members. ¶ 64 (emphasis added). ***Second***, in *Rodriguez*, the plaintiff had "not alleged any misuse or even attempted misuse of her data[.]" 2025 WL 2700614, at *1. But here, Plaintiff Tilger was notified by Experian that his Social

Security number "was exposed on the dark web" and "can't be removed." *Id*. ¶ 269.

Thus, the holding of *Rodriguez* applies with even greater force here, and dismissal is improper. *See also Stinson v. Yum! Brands, Inc*., 2025 WL 2755879, at *6 (W.D. Ky. Aug. 29, 2025) (holding that "loss of privacy" is an "injury-in-fact"); *In re CBIZ Data Breach Litig*., 2025 WL 1557033, at *5 (N.D. Ohio June 2, 2025) (finding standing when plaintiffs alleged "invasion of privacy").

### b.   The Substantial Risk of Further Harm Establishes Standing.

This Court has explained that "[t]he potential for harm in the future" may establish standing when "the harm is 'certainly impending' or the risk of harm is 'substantial.'" *Rodriguez*, 2025 WL 2700614, at *4 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)). And in "the data-breach setting, the risk of fraud is more likely to be 'substantial' when (1) the data was intentionally taken by hackers (as opposed to unintentionally exposed by the defendant), (2) some of the individuals whose data was taken have been the victim of fraud (even if the plaintiff has not been), and (3) the nature of the data taken lends itself to fraud (e.g., Social Security numbers as opposed to phone numbers)." *Id*. (citing *Bohnak v. Marsh & McLennan Cos*., 79 F.4th 276, 289 (2d Cir. 2023)).

Here, Plaintiffs established a "substantial risk" of further harm. *Rodriguez*, 2025 WL 2700614, at *4. **First**, Salus admitted that the Data Breach resulted in "unauthorized access" by cybercriminals. ¶ 64. **Second**, Plaintiff Tilger already

suffered from the misuse of his Private Information (i.e., dissemination of his Social Security number on the Dark Web). ECF No. 19-5. ***Third***, the Data Breach exposed Social Security numbers, drivers' license numbers, and financial account information. ¶ 64. Such sensitive information "lends itself to fraud[.]" *Rodriguez*, 2025 WL 2700614, at *4.

In the Sixth Circuit, these allegations establish Article III standing. *See, e.g.*, *Silveira v. Commer. Specialty Truck Holdings, LLC*, 2025 WL 2323911, at *3 (E.D. Ky. Aug. 12, 2025) (holding that plaintiff has standing and "[w]here a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for [] fraudulent purposes") (quoting *Galaria v. Nationwide Mut. Ins. Co*., 663 F. App'x 384, 388 (6th Cir. 2016)); *Stinson*, 2025 WL 2755879, at *6 (holding that plaintiffs "alleged a sufficiently imminent risk of future harm for Article III standing"); *In re Numotion*, 2025 WL 57712, at *5 (M.D. Tenn. Jan. 9, 2025) (same); *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1106 (E.D. Tenn. 2024) (same); *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, 2024 WL 5659583, at *10 (E.D. Mich. Sep. 30, 2024); *Kingen v. Warner Norcross + Judd LLP*, 2023 WL 11965363, at *3 (W.D. Mich. Oct. 5, 2023) (same); *Lochridge v. Quality Temp. Servs*., 2023 WL 4303577, at *4 (E.D. Mich. June 30, 2023) (same); *Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319, at *5 (W.D. Ky. Sep. 8, 2022) (same); *Brickman v. Maximus, Inc*., 2022 WL 16836186, at *4 (S.D. Ohio May 2,

2022) (same).

In response, Salus hinges its argument on the factually inapposite *Mission*. Mot. at 9. In *Mission*, the court emphasized that "most problematically, Plaintiff has not sufficiently alleged that a data breach actually occurred." *Doe v. Mission Essential Grp., LLC*, 2024 WL 3877530, at *4 (S.D. Ohio Aug. 20, 2024). There, the data breach notice did "not state that a data breach occurred[.]" *Id*. Rather, the defendant was "notified by federal law enforcement authorities of a potential incident" but that defendant "was unable to validate the reports from law enforcement and confirm unauthorized access[.]" *Id*. And critically, the plaintiff "offer[ed] no allegations of fact that contravene [defendant's] statements[.]" *Id*.

In sharp contrast to *Mission*, this class action arises from a data breach that "actually occurred" and caused a cascade of injuries. ¶¶ 63-64. Thus, *Mission* is of limited persuasive value—especially because *Rodriguez*, *Silveira*, *Stinson*, *Numotion*, *Haney*, *In re Flagstar*, *Kingen*, *Lochridge*, *Bowen*, and *Brickman* provide clear guidance: Plaintiffs established standing, and dismissal is improper.

### c.  Monetary Losses Establish Standing.

In the Sixth Circuit, "allegations of [1] a substantial risk of harm, coupled with [2] reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury[.]" *Silveira*, 2025 WL 2323911, at *2 (quoting *Galaria*, 663 F. App'x at 388). As explained above, Plaintiffs sufficiently alleged a substantial risk

of harm. *See also* ¶¶ 64, 70, 72, 75-78. And because of that risk, Plaintiff Tilger reasonably incurred an out-of-pocket cost of $19.99 for an Experian membership to run a "dark web scan" and guard against fraud. ¶¶ 269-70.

In the Sixth Circuit, these allegations establish Article III standing. *See, e.g.*, *Stinson*, 2025 WL 2755879, at *6 (holding that "mitigation costs" are an "injury-in-fact"); *Haney*, 747 F. Supp. 3d at 1106 (finding standing when plaintiffs alleged "expenses to mitigate the damages . . . including purchasing credit monitoring"); *Viviali v. One Point HR Sols., LLC*, 2025 WL 1158740, at *4 (E.D. Ky. Apr. 21, 2025) (finding standing when plaintiffs alleged mitigation costs); *Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 775 (S.D. Ohio 2024) (same); *Lochridge*, 2023 WL 4303577, at *4 (same); *Bowen*, 2022 WL 4110319, at *5 (same).

In response, Salus relies on a misreading of *Numotion. See* Mot. at 13. There, the court did not—as Salus suggests—reject allegations of "out-of-pocket expenses." *Numotion*, 2025 WL 57712, at *3. Rather, the court merely "note[d] as an initial matter, however, that the named plaintiffs themselves do not allege that they personally experienced identity theft or that they have personally incurred out-of-pocket expenses[.]" *Id.* Thereafter, the court moved on to "the actual injuries that the plaintiffs themselves allegedly incurred" and then held that plaintiffs "adequately alleged facts establishing Article III standing." *Id.* at *3, 6. Thus, *Numotion* is inapposite on this issue.

**d.      Targeted and Suspicious Spam Calls Establish Standing.**

After the Data Breach, Plaintiffs experienced an increase in targeted and suspicious spam calls, text messages, and emails. ¶¶ 239, 249, 264 ("Plaintiff Tilger began experiencing a substantial increase in spam and scam text messages and phone calls, including messages about insurance [] which Defendant provides to businesses[.]"). In the Sixth Circuit, these allegations establish Article III standing. *See, e.g.*, *In re Bon Secours Mercy Health Data Breach Litig*., 2025 WL 1827804, at *5 (S.D. Ohio July 2, 2025) (holding that "spam emails and texts 'count' as injuries for standing purposes" and are fairly traceable because "bad actors can utilize Fullz packages . . . to link individuals' compromised PII with publicly available information"); *Vivali*, 2025 WL 1158740, at *3 (finding standing when plaintiffs alleged "a dramatic uptick in spam and scam calls"); *Tate v. EyeMed Vision Care, LLC*, 2023 WL 638346, at *5 (S.D. Ohio Sep. 29, 2023) (same).

**e.      Lost Time and Effort Establishes Standing.**

In response to the substantial risk of harm, Plaintiffs lost time and effort, *inter alia*, reviewing bank accounts, monitoring credit reports, and changing passwords. ¶¶ 234, 248, 271, 292. In the Sixth Circuit, these allegations establish Article III standing. *See, e.g.*, *Vivali*, 2025 WL 1158740, at *3 (finding standing when plaintiffs alleged lost "time and effort to protect themselves and prevent identity theft"); *CBIZ*, 2025 WL 1557033, at *5 (same); *Numotion*, 57712, at *5 (same); *Haney*, 747 F.

Supp. 3d at 1106 (same); *Brooks*, 732 F. Supp. 3d at 775 (same); *Kingen*, 2023 WL 11965363, at *3 (same); *Lochridge*, 2023 WL 4303577, at *4 (same); *Bowen*, 2022 WL 4110319, at *5 (same); *Brickman*, 2022 WL 16836186, at *4-6 (same); *Newman v. Total Quality Logistics, LLC*, 2021 WL 1192669, at *4 (S.D. Ohio Mar. 30, 2021) (same).

In response, Salus relies on the procedurally and factually inapposite *Shepherd*. Mot. at 14. There, the plaintiff lacked standing because the defendant submitted a sworn declaration by a corporate executive—attesting that "there is no indication that any of Plaintiff's personal information was compromised[.]" *Shepherd v. Cancer & Hematology Ctrs. of W. Mich., P.C.*, 2023 WL 4056342, at *4 (W.D. Mich. Feb. 28, 2023). Critically, the plaintiff did "not refute the accuracy of [the] declaration." *Id*.

Thus, *Shepherd* is of limited persuasive value—especially because *Viviali*, *CBIZ*, *Numotion*, *Haney*, *Brooks*, *Kingen*, *Lochridge*, *Bowen*, *Brickman*, and *Newman* provide clear guidance: Plaintiffs have standing, and dismissal is improper.

### f. Emotional Injuries Establish Standing

In response to the substantial risk of harm, Plaintiffs suffered from "anxiety, sleep disruption, stress, fear, and frustration." ¶¶ 238, 250, 260, 286. In the Sixth Circuit, these allegations establish Article III standing. *See, e.g.*, *CBIZ*, 2025 WL 1557033, at *5 (finding standing when plaintiffs alleged "emotional stress");

*Kingen*, 2023 WL 11965363, at *3-5 (finding standing when plaintiffs alleged "anxiety and increased concerns for the loss of privacy"); *Bowen*, 2022 WL 4110319, at *5 (same). Thus, dismissal is improper.

In sum, Plaintiffs alleged numerous "injuries-in-fact." Thus, Plaintiffs met— and even exceeded—their pleading burden to establish Article III standing, and dismissal under Rule 12(b)(1) would be improper.

## II.     Plaintiffs Sufficiently Alleged Their Claims.

### a.     Plaintiffs Allege Cognizable Injuries.

Plaintiffs pleaded numerous "present injuries" as required under Michigan law. ¶¶ 269-70. On this point, Salus argues that dismissal is necessary because negligence requires a manifestation of physical harm. Mot. at 18-19. But here, Plaintiffs alleged both "anxiety . . . stress, fear, and frustration" and also the resulting physical manifestation of "sleep disruption[.]" *Compare* ¶¶ 162, 260, 286, *with Rodriguez*, 2025 WL 2700614, at *5 (dismissing negligence claim where plaintiff failed to allege a physical manifestation) *and Angus v. Flagstar Bank, FSB*, 2025 WL 937760, at *1 (E.D. Mich. Mar. 27, 2025) (Hr'g Tr., 2:21-cv-10657 PageID.2111 (stating that a physical harm is required). Thus, even if a physical harm is required, Plaintiffs provided allegations that are sufficient at this stage. [3]

---

[3] Michigan courts recognize "routes around the physical-injury requirement" such that "a plaintiff without physical injuries may recover for a defendant's negligence through an 'independent basis for tort liability[.]'" *Rodriguez*, 2025 WL 2700614, at

Moreover, federal courts in Michigan recognize that data breach cases readily give rise to cognizable present injuries.[4] For example, in *Hummel v. Teijin Auto. Techs., Inc.*, 2023 WL 6149059, at *12 (E.D. Mich. Sep. 20, 2023) the court denied dismissal—for both negligence and implied contract—when plaintiff alleged misuse of PII (attempted identity theft) and $19.80 in out-of-pocket mitigation costs, even without allegations that the PII was on the dark web, as here. Plaintiffs here alleged similar injuries to that in *Hummel*, whereby Plaintiff Tilger suffered the misuse of his private information (publication of his Social Security number on the Dark Web) *and* $19.99 in out-of-pocket mitigation costs. ¶¶ 269-70.

In *Lochridge*, the court denied dismissal of negligence and implied contract where plaintiff alleged actual identity theft—but did not allege any out-of-pocket monetary losses. *Lochridge*, 2023 WL 4303577, at *3-4 (alleging plaintiff "had a

---

*8 (quoting *Daley v. LaCroix*, 179 N.W.2d 390, 392 (Mich. 1970)). Thus, any "physical-injury requirement" here is obviated as Plaintiffs allege several "independent" bases for tort liability—i.e., the FTC Act, 15 U.S.C. § 45; the Health Information Technology Act, 42 U.S.C. §17921; and HIPAA. *See* ¶¶ 123-46, 313-17. At this early stage, these allegations are sufficient. *See Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.*, 809 N.W.2d 553, 555 (Mich. 2011) (noting separation between "common-law . . . duties" and "statutory tort duties").

[4] Plaintiffs also alleged, *inter alia*, (a) financial costs mitigating materialized risk and imminent threat of identity theft; (b) loss of time and productivity mitigating materialized risk and imminent threat of identity theft; (c) actual misuse of PII; (d) financial costs due to the misuse of PII; (e) loss of time due to the misuse of PII; (f) deprivation of value of their PII; (g) loss of privacy; (h) emotional distress; and (i) the continued risk to their sensitive Private Information. ¶¶ 3-4, 11-14, 26, 30, 75-78, 159-62, 168-71, 182, 187-215, 233-40, 244, 249-53, 258-75, 281-92.

loan fraudulently applied for using his [personal] information" as sufficiently concrete). Here, Plaintiffs provided stronger allegations than *Lochridge*—Plaintiff Tilger alleged both misuse and $19.99 in out-of-pocket monetary losses. ¶¶ 269-70.

In *Kingen*, 2023 WL 11965363, at *4 (W.D. Mich. Oct. 5, 2023), the court denied dismissal when plaintiffs alleged that they "have suffered and will suffer" injuries including "the compromise, publication, and/or theft of their PII" and "out-of-pocket expenses[.]" The court noted that the "complaint makes it difficult to surmise which alleged injuries have already happened and which injuries could happen" but nonetheless denied dismissal because plaintiffs alleged "injury beyond a mere risk of future injury." *Id*. Here, Plaintiffs provided far stronger allegations, and Plaintiff Tilger alleged—without equivocation or ambiguity—both misuse and out-of-pocket monetary losses. ¶¶ 269-70.

Based on those facts, the court in *Kingen* then distinguished the *Henry* and *Rakyta* decisions (which Salus uses to buttress its negligence argument). Mot. at 18 (stating that "Michigan law only recognized emotional distress as the basis for a negligence claim when the emotional distress involved present physical manifestations of the distress"). ***First***, in *Kingen*, the court explained that the "complaint is sufficiently distinct from [*Henry*] to survive a motion to dismiss" because plaintiffs "allege their injuries have occurred, whereas in [*Henry*], the plaintiffs merely alleged future risk of harm." 2023 WL 11965363, at *4. ***Second***,

in *Kingen*, the court explained that "*Rakyta* is also not dispositive at this stage because Plaintiffs pled more than an immediate risk of harm[.]" *Id.*

In sum, Plaintiffs provided allegations similar to *Hummel*, but stronger than *Lochridge* and *Kingen*. Thus, Plaintiffs exceeded their pleading burden under Rule 12(b)(1), and dismissal would be improper.

Moreover, this conclusion—that dismissal is improper—broadly aligns with analogous precedent across the country. *See, e.g., In re Experian Data Breach Litig.*, 2016 WL 7973595, at *5 (C.D. Cal. Dec. 29, 2016) ("[A] growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. Mar. 17, 2021) (recognizing "the lost property value" of PII); *In re GEICO Customer Data Breach Litig.*, 691 F. Supp. 3d 624, 633-34 (E.D.N.Y. 2023) ("[E]ven absent a risk of future identity theft, such concrete and particularized loss[es] based on actual time spent responding to the already-occurred identity thefts are sufficient to demonstrate a concrete injury"); *In re MOVEit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *10 (D. Mass. Dec. 12, 2024) (time spent responding to a data breach is a concrete injury); *Tignor v. Dollar Energy Fund, Inc.*, 745 F. Supp. 3d 189, at *203 (W.D. Pa. Aug. 15, 2024) (expenses to mitigate harm from a data breach are sufficient); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 494 (D. Md. 2020) (damages include loss of time and money spent

mitigating harms); *In re Anthem*, *Inc. Data Breach Litig.*, 2016 WL 3029783, at \*26 (N.D. Cal. May 27, 2016) (lost time monitoring PII is recoverable even without out-of-pocket costs); *Dinerstein v. Google, LLC*, 73 F.4th 502, 515 (7th Cir. 2023) (distinguishing non-data breach plaintiff's speculative injuries from data breach plaintiffs' concrete injuries, observing that hackers steal private information to commit fraud).

### b.   Plaintiffs Sufficiently Alleged Negligence.

Salus argues that receipt of the Notice Letter fails to plead the requisite causation.[5] Mot. at 19. Plaintiffs do far more and alleged a direct causal chain, including that Salus failed to implement basic, industry-standard cybersecurity practices, leaving Class Members' unencrypted Private Information exposed to cybercriminals. ¶¶ 2, 10, 23-24, 77-80. Plaintiffs alleged that an unauthorized third party accessed the Private Information of Class Members. ¶¶ 26-27, 69-72, 28, 154-55, 162-73. Consequently, Plaintiffs' Private Information was extracted and has been and will continue to be used for identity theft, fraud, or other criminal activity. ¶¶ 27, 70-72, 154-157, 159-161, 162-173. As a result, Plaintiffs suffered, and will continue to suffer, actual misuse of their information, including identity theft and

---

[5] Further, proximate cause is a fact-intensive inquiry, inappropriate for resolution on a motion to dismiss. *See, e.g.*, *In re GEICO*, 691 F. Supp. 3d at 632; *In re AMCA Data Breach Litig.*, 2021 WL 5937742, at \*15 (D.N.J. Dec. 16, 2021) ("Like breach of duty, causation is ordinarily a question of fact for the jury.").

fraud, out-of-pocket expenses, lost time, anxiety, and deprivation of the value of their Private Information. ¶¶ 29-30, 154-56, 198-204, 210-19. These harms were exacerbated by Salus's six-month delay in providing notice, preventing Plaintiffs from mitigating or halting misuse. ¶¶ 6-7, 9, 15-16, 59-60, 199. *Kingen* found such allegations to be sufficient at the same stage. *Kingen*, 2023 WL 11965363, at *5.

Plaintiffs further alleged that, as a result of Salus's inadequate security practices, and the foreseeable consequences of Plaintiffs' Private Information ending up in criminals' possession, Plaintiffs have sustained actual damages, including increased spam calls. ¶ 156. This is sufficient for this stage. *Kingen*, 2023 WL 11965363, at *5.[6] Moreover, Plaintiffs plausibly alleged that their Private Information was pieced together to obtain additional information for fraud.[7] ¶¶ 169-73; *see In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1206 (S.D. Fla. 2022). Plaintiffs alleged harms stemming directly from the

---

[6] Courts consistently hold that even if some categories of injury, like spam communications, may seem implausible, other plausible harms—including lost time, anxiety, and heightened privacy concerns—are sufficient to establish proximate cause at the pleading stage. *See In re Arthur J. Gallagher*, 631 F. Supp. 3d at 586.

[7] Plaintiffs allege that cybercriminals take stolen Private Information and combine it with other sources to create so-called "Fullz" packages, comprehensive dossiers including multiple data points that allow criminals to cross-reference information and identify other PII, enabling fraudulent activity. ¶¶ 169-73. Even if certain categories of information were not directly stolen, the Fullz packages allow hackers to exploit the Data Breach to gather further sensitive information, demonstrating that Plaintiffs' injuries are a direct and foreseeable consequence of the Data Breach.

Data Breach, *see, e.g.*, ¶ 30, which are sufficient to satisfy standing, which is co-extensive with the harm necessary to support damages in a negligence claim. *Bohnak*, 79 F.4th at 289-90; *TransUnion*, 594 U.S. at 425-26 (exposure of private data is a concrete harm sufficient to provide standing); *Briggs v. N. Highland Co.*, 2024 WL 519722, at *9 (N.D. Ga. Feb. 9, 2024) (injuries sufficient for Article III standing are sufficient for damages for negligence claim); *Allen v. Wenco Mgmt. LLC*, 696 F. Supp. 3d 432, 437-38 (N.D. Ohio 2023).

### c.    Plaintiffs Sufficiently Alleged Their Contract Claims.

#### i.  *Plaintiffs Sufficiently Alleged Breach of Implied Contract.*

Plaintiffs adequately pleaded the elements of mutual assent and consideration. The mutual assent required to enter into an implied contract can be shown "from the conduct of the parties, language used or things done by them, or other pertinent circumstances[.]" *Erickson v. Goodell Oil Co.*, 180 N.W.2d 798, 800 (Mich. 1970). Accordingly, "[t]he existence of such a contract is usually a question of fact" for the jury. *Temborius v. Slatkin*, 403 N.W.2d 821, 826 (Mich. App. 1986). In recent data breach decisions, this Court found sufficiently alleged mutual assent where plaintiffs were required "to provide [] information to utilize their services, thereby creating an implied contract they would" protect his PII. *Lochridge*, 2023 WL 4303577, at *7. *See also Hummel*, 2023 WL 6149059 at *9-10. Plaintiffs' allegations mirror those this Court found sufficient in *Lochridge* and *Hummel*. *See* ¶¶ 337-41.

Plaintiffs' labor and provision of their Private Information are adequate consideration to form an implied contract. *Hummel*, 2023 WL 6149059, at \*9. Plaintiffs here alleged that Salus's duties to protect their Private Information extend beyond the preexisting duties imposed by statutes and regulations. "Under Michigan law . . . the preexisting legal duty rule applies only to duties imposed by statute or contract" not if the defendant's duty arose under tort. *Hummel*, 2023 WL 6149059, at \*9; *see also In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 591 (N.D. Ill. 2022) (finding an "implicit promise to protect employees' personal information in exchange for their employment"). Plaintiffs identify multiple sources establishing Salus's duty to safeguard their Private Information and prevent foreseeable harm to others, including Salus's own Privacy Policy and obligations under common law, *see* ¶ 47, sufficient to establish a duty outside of Salus's preexisting legal duties.

### ii. *Plaintiffs Sufficiently Alleged Breach of Third-Party Beneficiary Contract.*

Numerous courts have upheld similar claims for breach of third-party beneficiary contract in the data breach contract. *See, e.g.*, *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 920 (S.D. Cal. 2020) ("[W]ithout discovery, it is not clear what more Plaintiffs could plead, or what more [defendant] would need to be able to defend against Plaintiffs' claims that they are third party beneficiaries of

[defendant]'s contracts."); *Kroeck v. UKG, Inc.*, 2022 WL 4367348, at *5 (W.D. Pa. Sept. 21, 2022) (declining to dismiss third-party beneficiary contract claim where "the contract between Defendants and the hospital is not yet part of the record"); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1181 (N.D. Cal. 2017) ("While [plaintiff] does not cite specific provisions from the alleged contracts between [defendant] and its dealers, it would be inappropriate to impose such a duty at the pleadings stage, prior to the benefit of discovery.").

Here, Plaintiffs sufficiently state each element of third-party beneficiary contract claim: "Defendant entered into virtually identical contracts with its clients to provide employee benefit services," the contracts were made "expressly for the benefit of Plaintiffs and the Class and . . . the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties," Salus "breached its contracts with its clients[,]" and Plaintiffs were damaged by the Data Breach. ¶¶ 362-65. Accordingly, Plaintiffs alleged they were the intended rather than incidental beneficiaries of the contracts, and Salus's motion to dismiss this claim should be denied.

### d.   Plaintiffs Sufficiently Alleged Unjust Enrichment.

Unjust enrichment under Michigan law requires that a plaintiff must allege the conferring of a benefit directly on the defendant, and that defendant's retention of that benefit without compensating plaintiff resulted in inequity to the plaintiff.

*Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. App. 2006).
Plaintiffs alleged they directly conferred benefits on Salus—payment for services
and the use of Plaintiffs' Private Information to facilitate Salus's business and
financial gain. ¶ 353. The money Plaintiffs paid to Salus was supposed to be used by
Salus, in part, to pay for reasonable data security for Plaintiffs' and Class Members'
Private Information, but instead, Salus enriched itself by saving the costs that should
have gone towards data privacy measures, resulting in Plaintiffs' and Class
Members' detriment. ¶ 356. Accordingly, allowing Salus to retain the benefits of
unearned payments and use of Plaintiffs' Private Information would result in an
inequity where Plaintiffs and Class Members overpaid and enriched Salus for data
security that it did not provide. ¶ 357 ("Defendant instead calculated to avoid its data
security obligations at the expense of [the Class] by utilizing cheaper, ineffective
security measures.").

Courts nationwide routinely decline to dismiss unjust enrichment claims in
data breach cases with similar facts and allegations to those here. *See, e.g.*, *Bowen*,
2022 WL 4110319, at *8 (W.D. Ky. 2022); *In re Cap. One Consumer Data Sec.
Breach Litig.*, 488 F Supp 3d 374, 412 (E.D. Va. 2020); *Fero v. Excellus Health
Plan, Inc.*, 236 F. Supp. 3d 735, 770 (W.D.N.Y. 2017); *In re Premera Blue Cross
Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1201 (D. Or. 2016).

**e.    Plaintiffs Sufficiently Alleged Declaratory Judgment.**

23

Contrary to Salus's arguments that the declaratory judgment claim fails to plead that a "threatened injury –such as another data breach – is certainly impending," Mot. at 25, Plaintiffs sufficiently allege standing. Plaintiffs pleaded, on information and belief, that, after the Breach, Salus's actions were and still are inadequate and unreasonable, and, as a result, Plaintiffs and the Class members are still suffering from the threats of ongoing fraud and identity theft. ¶ 370. Plaintiffs request the Court issue injunctive relief to avoid immediate, irreparable injury. ¶ 373. Plaintiffs pleaded that monetary relief is insufficient, and that injunctive relief is necessary to prevent further and future injuries to Plaintiffs and the Class, ¶ 374, establishing sufficient factual basis for declaratory injunctive relief.

Salus's sole remaining argument incorrectly asserts that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an "independent cause of action." Mot. at 25. The Act explicitly provides, "upon the filing of an appropriate pleading, [the court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts'" to grant declaratory relief). Salus's arguments fail and the Court is empowered to allow it to proceed.

## **CONCLUSION**

24

For these reasons, Plaintiffs respectfully request that the Court deny the Motion in its entirety. If any part of the Amended Complaint is dismissed, Plaintiffs respectfully request leave to amend to afford Plaintiffs an opportunity to cure any deficiencies identified by the Court. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[R]ule 15(a) declares that leave to amend 'shall be freely given[.]'").

Dated: November 3, 2025    By: */s/ Raina C. Borrelli*
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Interim Class Counsel for Plaintiffs and the Proposed Class*

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: (888) 350-3931

E. Powell Miler (P39487)
Gregory A. Mitchell (P68723)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
gam@millerlawpc.com

Gary M. Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: 866.252.0878
gklinger@milberg.com

Nathan J. Fink
**FINK BRESSACK**
38500 Woodward Ave., Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
nfink@finkbressack.com

Sean Short
Arkansas Bar No. 2015079
**SANFORD LAW FIRM, PLLC**
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946
sean@sanfordlawfirm.com

*Additional Counsel for Plaintiffs and the
Proposed Class*

26

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that on November 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system. DATED this 3rd day of November, 2025.

STRAUSS BORRELLI PLLC

By:  */s/ Raina C. Borrelli*
Raina C. Borrelli
raina@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109